**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jaynee Stricker, et al., ) | CIV. 11-8096-PCT-PGR |
| Plaintiffs, ) | **ORDER** |
| v. ) | |
| Yavapai County, et al., ) | |
| Defendants. ) | |

Before the Court is Defendants' Motion for Summary Judgment. (Doc. 28.) The motion has been fully briefed. (*See* Doc's 32. 36.) For the reasons explained in this order, the Court will grant the motion.

**Background**

Plaintiffs are Jaynee Stricker, the mother of Tobiah Stricker (Stricker), deceased, and Niki Kendal, as parent and legal guardian of Cheyenne Stricker, Stricker's daughter. Stricker committed suicide while in custody at the Yavapai County Jail. Defendants are Yavapai County and Steve Waugh in his capacity of Sheriff of Yavapai County.

On May 13, 2010, Stricker was arrested by the Prescott City police. (Doc. 29, ¶ 1). Detective Norman Peterson conducted Stricker's arrest interview. (*Id.*, ¶ 2). Peterson prepared a supplemental report stating that Stricker "appeared to be disoriented and not making sense." (Doc. 29, Ex A at 7.) Peterson's report was not forwarded to the jail. (*Id.* at 12.) At his deposition, Peterson testified that he observed no "warning signs or red flags that

Mr. Stricker may have been suicidal" or in need of immediate medical or psychiatric treatment. (*Id.* at 13, 17.)

Stricker was transported to Yavapai County Jail and placed in a holding cell. He demanded to make a phone call. (*Id.*, Ex. B at 5.) Officers explained that he would be allowed to use the phone following the booking process. (*Id.*) Stricker then became noncompliant and aggressive. Officers responded with force, including the use of a Taser. (*Id.* at 5–6, 14).

After Stricker was brought into compliance, he was screened by Debra Wagner, a licensed practical nurse. (*See id.*, Ex. E at 1.) Wagner had Stricker fill out a written assessment. (*Id.* at 8–12, 15.) At her deposition, Wagner testified that Stricker's intake evaluation indicated that he was not a suicide risk. (*Id.* at 15, 19.) She also testified that two other nurses were on duty during her shift. (*Id.* at 7–8.)

Stricker was housed in administrative segregation due to his combative behavior during booking. (*Id.*, Ex. B at 17; Ex. F at 7.) On May 16, 2010, he was compliant with the morning head count. (*Id.*, Ex. G at 6, 15). Later that day, he met with a bondsman and had a half hour of recreation time before returning to his cell. (*Id.*, Ex. F at 7–8.) At approximately 4:30 p.m., Stricker was found dead in his cell from self-inflicted strangulation.

Plaintiffs filed a complaint in Yavapai County Superior Court on May 13, 2011, alleging civil rights violations under 42 U.S.C. § 1983 and wrongful death under Arizona law. (*See* Doc. 1, Ex. 1.) Defendants removed the case on June 21, 2011. (Doc. 1.)

**Analysis**

**1.    Summary Judgment**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying

- 2 -

those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant meets its initial responsibility, the burden then shifts to the nonmovant to demonstrate the existence of a material factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, but it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed.R.Civ.P. 56(c)(1).

### 2. Federal claims

Plaintiffs have sued Yavapai County and Sheriff Waugh in his official capacity. A claim against an official capacity defendant is equivalent to a claim against the governmental entity represented by the official capacity defendant. *See Hafer v. Melo*, 502 U.S. 21, 25 (1995); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Therefore, Plaintiffs' claim against Sheriff Waugh is equivalent to a claim against the County itself. *See Brewster v. Shasta County*, 275 F.3d 803, 806-07 (9th Cir. 2001).

Municipalities and other local government units such as counties are considered "persons" under 42 U.S.C. § 1983 and therefore may be liable for causing a constitutional deprivation. *Monell v. Dep't of Social Services*, 436 U.S. 658, 690–91 (1978); *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). To establish municipal liability, a plaintiff must show that a county policy or custom, adopted with "deliberate indifference" to its known or obvious consequences, was the moving force in causing the plaintiff to suffer constitutional injury. *Board of County Com'rs of Bryan County v. Brown*, 520 U.S. 383, 407–08 (1997); *Monell*, 436 U.S. at 691. To be a "moving force," an identifiable deficiency in the municipality's policies must be closely related to the ultimate injury. *City of Canton v. Harris*, 489 U.S. 378, 391 (1989).

In their Complaint, Plaintiffs allege that Sheriff Waugh and the County tolerated practices that were known to violate the rights of detainees and acted with deliberate indifference to their medical needs. (Doc. 1, Ex. 1, ¶ 25.) They also allege that Defendants failed to train and supervise their staff and agents to evaluate, monitor, and treat detainees with mental health issues. (*Id.*, ¶ 27.)

Plaintiffs further contend that while "Defendants may have adopted an adequate written policy for the intake of detainees," they consciously chose not to follow that policy. (Doc. 32 at 2.) Plaintiffs assert that Defendants did not perform an adequate assessment of Stricker's condition prior to intake, despite the fact that he was "obviously in need of medical attention." (*Id.* at 1.) Specifically, Plaintiffs allege that the initial screening was not performed by a qualified mental health professional and was not completed before Stricker was incarcerated. (*Id.* at 3–4.) They further contend that Defendants "made it impossible to follow the written policy by not even having a qualified mental health staff person on site at the critical time." (*Id.* at 6.)

To support their claim of municipal liability, Plaintiffs must show that (1) Defendants had a custom of failing to follow their written protocol with respect to the intake of detainees; (2) the failure amounted to deliberate indifference to threats to Stricker's safety; and (3) the failure was the moving force behind his death. Plaintiffs' claim fails because they have not shown the existence of a custom or policy.

Apart from the specific instance involving Stricker, Plaintiffs offer no factual basis for their allegations that Defendants had a custom of failing to follow their written intake policy. The record contains no evidence supporting such an allegation, a point noted by Plaintiffs' expert, Joel Dvoskind. Dr. Dvoskind, a clinical psychologist, prepared a report in which he concluded that nurse Wagner "fell below the standard of care by failing to refer Mr. Stricker for assessment by a qualified mental health professional despite the fact that he appeared to be under the influence of something." (Doc. 29, Ex. H, Dvoskind report at 12.).

- 4 -

Dvoskind then stated, however, that "since I am aware of only this one isolated example of such failure, I cannot conclude that it represents deliberate indifference to Mr. Stricker's serious medical needs." (*Id.*) Dr. Dvoskind added that he could not "state with confidence what the results of a competent assessment would have been." (*Id.*)

A custom is a practice that is not authorized by written law but which is "so permanent and well-settled . . . as to [have] the force of law." *Monell*, 436 U.S. at 691. Evidence of "random acts or isolated events is insufficient to establish custom." *Navarro v. Block*, 72 F.3d 712, 714–15 (9th Cir. 1996); *see Merritt v. County of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989).

"Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985). For example, in *Perez v. Oakland County*, 466 F.3d 416, 431 (6th Cir. 2006), the Sixth Circuit affirmed summary judgment where the plaintiff provided no evidence that allowing non-medical personnel to make housing decisions "has ever resulted in a suicide or attempted suicide by another inmate, either at the County Jail or in another jail across the country." *See Russell v. Hennepin County*, 420 F.3d 841, 849 (8th Cir. 2005) (finding no *Monell* violation where plaintiff failed "to produce evidence that, at the time of his prolonged detention, there was a widespread and persistent failure to follow the relevant ADC policy"). An allegation of a single instance of misconduct, such as Plaintiff proffers here with respect to the treatment of Stricker, is insufficient to establish the existence of a custom of disregarding the jail's written intake policy. *See, e.g.*, *Merritt*, 875 F.2d at 770 (noting that "the only evidence presented by Merritt on the issue [of inadequate training] was the manner in which he himself was arrested").

Moreover, while a "single instance of allegedly failing to follow official policy may rise to the level of negligence, [i]t does not . . . suffice to establish causation as required to advance a claim of municipal liability under § 1983." *Russell*, 420 F.3d at 849; *see Daniels*

*v. Williams*, 474 U.S. 327, 334 (1986); *Blankenhorn v. City of Orange*, 485 F.3d 463, 484–85 (9th Cir. 2007) (holding that "absent evidence of a program-wide inadequacy in training, any shortfall in a single officer's training can only be classified as negligence on the part of the municipal defendant-a much lower standard of fault than deliberate indifference") (internal quotation omitted).

Plaintiffs allege at most that the staff were negligent in their execution of the jail's intake policy with respect to Stricker. These allegations are insufficient to establish the existence of a custom of disregard for policy that would constitute deliberate indifference. Having failed to support their allegation that Defendants had a custom that amounted to deliberate indifference, Plaintiffs cannot show that the custom was the "moving force" behind the alleged constitutional violations.

## III.  State Law Claims

Plaintiffs assert a wrongful death claims based on negligence arising from the alleged failure of Sheriff Waugh and his staff to properly evaluate, monitor, and treat Stricker. (Doc. 1, Ex. 1, ¶ 33.) Defendants argue that Yavapai County cannot be held liable for the Sheriff's actions taken in furtherance of his statutory duties. (Doc. 28 at 8.) The Court agrees. "Because the duty to operate the jails has been statutorily delegated to the Sheriff and the County has no right to control operation of the jails, the County cannot be held vicariously liable for the torts of Sheriff's Deputies or Detention Officers." *Nevels v. Maricopa County*, No. CV11-2466-PHX-JAT, 2012 WL 1623217, at *4 (D.Ariz. May 9, 2012) (citing *Fridena v. Maricopa County*, 18 Ariz.App. 527, 530, 504 P.2d 58, 61 (Ariz.Ct.App.1972)); *see Adamson v. Hayes*, No. 2:05-cv-2286-JWS, 2011 WL 2690611 (D.Ariz. July 12, 2011). Plaintiff therefore cannot state a claim against Yavapai County based on negligence allegedly committed by jail employees.

Finally, the Court having granted summary judgment for Defendants on Plaintiffs' § 1983 action, there are no federal claims remaining in this action. Dismissal of Plaintiffs' state law negligence claims is therefore within the Court's discretion. *See* 28 U.S.C. § 1367(c)(3)

("The district court may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."). The Supreme Court has explained that "if the federal claim are dismissed before trial, . . . the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997). The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.

### Conclusion

For the reasons set forth above, Defendants are entitled to summary judgment on Plaintiffs' § 1983 claim. The court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.

Accordingly,

IT IS HEREBY ORDERED granting Defendants' motion for summary judgment with respect to Plaintiffs' claims under 42 U.S.C. § 1983 (Doc. 28).

IT IS FURTHER ORDERED dismissing without prejudice Plaintiffs' state law claims.

DATED this 17th day of October, 2012.

Paul G. Rosenblatt
United States District Judge